Roy E. BRYANT, Petitioner,

v.

J. D. COX, Superintendent, Virginia State Penitentiary, Respondent.

Civ. A. No. 70-C-1-R.

United States District Court,
W. D. Virginia,
Roanoke Division.

March 26, 1970.

Gerald L. Baliles, Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION AND JUDGMENT

DALTON, Chief Judge.

This proceeding comes before the court on a petition for a writ of habeas corpus filed *in forma pauperis* by Roy E. Bryant, a prisoner of the State of Virginia, pursuant to the provisions of 28 U.S.C.A. § 2241. On the 29th of September, 1950, petitioner Bryant was convicted of first-degree murder and sentenced to a term of life imprisonment by the Hustings Court of the City of Roanoke. Seventeen years later, through the assistance of court appointed counsel, the petitioner sought relief by filing a petition for a writ of habeas corpus in the Hustings Court of the City of Roanoke on the 27th of April, 1967. The Hustings Court granted the petitioner a plenary hearing on the issues raised in his petition [1] (See Transcript—Page 2) on the 4th of January, 1968. Judge Richard T. Edwards, in an opinion from the bench, concluded that the points raised in allegations 2, 3, 4, 5, and 9 were "all eliminated prior to the taking of testimony on the grounds of either being irrelevant or immaterial insofar as a Habeas Corpus is concerned." Only question 3 of this group corresponds to one of the allegations raised by Bryant in his petition before this court. The Hustings Court did consider in depth allegations 6 and 7 which correspond with two similar points raised in the petition before this court.

The court (Hustings Court for the City of Roanoke) denied petitioner's petition for a writ of habeas corpus on the 29th of January, 1968. An appeal was noted and petitioner filed his petition for a writ of error with the Virginia Supreme Court of Appeals. In Bryant's petition for a writ of error, he raised all the claims that were presented to the Hustings Court at the habeas corpus hearing. The Supreme Court of Appeals denied any relief to the petitioner on the 5th of September, 1969. In affirming the lower court's decision, the Supreme Court of Appeals dealt almost exclusively with the question centering on Bryant's plea of guilty and its effect upon his ability to appeal his conviction. The Supreme Court of Appeals did affirm the Hustings Court's refusal to award the writ of habeas corpus on all the points raised in the petitioner's writ of error. See Bryant v. Peyton, 210 Va. 199, 169 S.E.2d 460 (1969).

In light of the foregoing, the court concludes that petitioner Bryant has exhausted his state remedies in compliance with the provisions of 28 U.S.C.A. § 2254 as interpreted by Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

After studying the records of the trial held in the Hustings Court for

[1]. One, that he did not have an attorney present at several critical steps of the proceedings against him.

Two, that prejudicial testimony was admitted into evidence against him.

Three, that he was arrested without a warrant.

Four, that the Court records are not accurate in all respects.

Five, that the mental examination afforded the petitioner was insufficient and that the Court discriminated against the petitioner in not allowing the petitioner to be examined at a mental hospital.

Six, that he was denied the right to have certain witnesses called in his behalf.

Seven, that he was denied effective representation by counsel.

Eight, that he was denied an appeal because of his indigence status; and

Nine, that he was prejudiced because he did not get a copy of his probation report, and that no opportunity was given him by the Court to cross examine the probation officer.

the City of Roanoke, and after thoroughly considering the transcript of the habeas corpus hearing held in the same court on the 4th of January, 1968, the court has found there to be full and sufficient evidence on which to render its decision. Accordingly, it will not be necessary that a plenary hearing be held in the case at bar.

Petitioner Bryant raises three points that have been dealt with by Virginia Supreme Court of Appeals. These points are as follows:

1. That he was the victim of an illegal arrest,
2. That he was denied the effective assistance of counsel,
3. and lastly, that he was denied the right to call certain witnesses in his behalf.

■ As to the first point raised by Bryant, it is clear from the record that it is frivolous. The habeas corpus transcript substantiates such a conclusion. The transcript shows the following discussion by counsel for the petitioner and the court. [Habeas Corpus Hearing—Page 6]

Mr. Osterhoudt: Your Honor, I would like to take these somewhat out of order. Initially, we would agree that the respondent's motion as it would relate particularly to the fact that Mr. Bryant was arrested without a warrant—as I have talked with Mr. Bryant—

The Court: Allegation Three?

Mr. Osterhoudt: Allegation number Three, yes, sir.—as I have talked with Mr. Bryant—and gone over the facts and background of this case, I do not feel that that allegation has any merit and, for that reason alone, I would concur with the respondent's motion.

■ The second allegation raised concerns whether the petitioner was effectively represented by counsel. This court, in reviewing the habeas corpus transcript, can only conclude that petitioner Bryant was afforded adequate and effective representation by counsel, namely from the now deceased, Mr. Pat H. Dillard. The record shows that Mr. Dillard was appointed by the Hustings Court to represent the petitioner some considerable time before a plea of guilty was entered by Bryant in September of 1950. The transcript (p. 85–86) shows that Mr. Dillard, in conjunction with the then Commonwealth's Attorney for the City of Roanoke, C. E. Cuddy, performed his duties in a most diligent manner. Mr. Cuddy points out the following:

Q. (Mr. Gerald Baliles, Assistant Attorney General) Well, do you recall his role or his participation, or his efforts, on behalf of the defendant in this case?

A. Yes, sir, I recall very much because of the—several conferences that Mr. Dillard and myself had prior to the disposal of the case here in Court, and the reason I recall it is there was quite a discussion between Dillard and myself on not one occasion, but two or three, with reference to a plea of guilty. And it was my contention that we would go along if he would plead guilty to first degree murder. And, of course, his contention was that he didn't have to plead guilty to first degree murder, that he could just plead guilty to the indictment. And we had several conferences about it and, finally, that is what he did in open Court—pled guilty to the indictment.

Q. Now, Mr. Cuddy, I believe the record will show, but perhaps your memory does recall the fact, that the petitioner did enter a plea of guilty?

A. As I recall, Mr. Dillard, he just never quit and during the trial, even though it was on a plea of guilty, he questioned all the witnesses that were submitted to the Court. Now, I don't recall how many but there were—as I recall

it, the taking of the evidence consumed the greater part of two days.

Q. I see. There were witnesses that testified on behalf of the petitioner, were there not, or do you recall?

A. I don't recall that he had witnesses. Some of them, they put on just for the defendant—no, I do not recall. I know that we put on a number of witnesses and that they were questioned in right much detail and length by Mr. Dillard.

In view of the foregoing, plus other references throughout the habeas corpus hearing, prompted Judge Edwards to make the following conclusion. (H.C. Hearing—Page 90–91.)

* * * the petitioner contends that he was denied the effective assistance of counsel and counsel committed gross irregularities during his representation. He has not carried the burden of proof in that respect whatsoever. He had the assistance of Mr. Pat Dillard, who was an effective trial lawyer and an experienced attorney who apparently, according to Mr. Cuddy, was a scrapper and rendered as long a service with this petitioner as the petitioner stated. He had many conferences with him and spent two days trying the case on a plea of guilty. It is not up to the Court to go into the question of his trial tactics, whether he did, whether he was correct or incorrect in the procedures he used, but simply to say whether or not he rendered effective assistance, and he did.

■ As pointed out by Judge Edwards, and as emphasized in applicable case law, the petitioner has the burden of showing that Mr. Dillard rendered ineffective counsel, in the absence of the late appointment of such counsel. Nowhere has the petitioner met this burden.

This court has on numerous occasions gone into the problems surrounding allegations of ineffective representation by counsel. The court, in considering the elements in the case at bar, clearly is of the opinion that Mr. Dillard afforded petitioner Bryant representation that meets a high standard.

The Fourth Circuit Court of Appeals, in the case of Fields v. Peyton, 375 F.2d 624, 628 (4th Cir. 1967) expressed the view that

* * * Courts are required to allow counsel sufficient time to inform themselves fully, to reflect maturely and to prepare thoroughly in cases to which they are assigned.

All the evidence before this court substantiates that counsel represented Bryant in a manner consistent with the criteria expressed by the Fourth Circuit. Likewise, this court is of the opinion that Mr. Dillard's representation was not so "transparently inadequate as to make a farce of the trial", Root v. Cunningham, 344 F.2d 1, 3 (4th Cir. 1965) but rather, his representation of the petitioner maintained the dignity and fairness that is essential in any criminal trial. In the light of the foregoing, petitioner's second allegation is found to be without merit.

■ Finally, petitioner Bryant maintains that he was denied the right to call certain witnesses in his own behalf during the 1950 criminal trial. The record shows that a substantial number of witnesses, at least fourteen (14), were called on behalf of the petitioner. (Habeas Corpus Hearing—Page 53); Also see, Respondent's Exhibit Number Two). Although some confusion seems to have existed as to what witnesses were considered as primary and secondary, it does nevertheless appear throughout the testimony that the petitioner was not prejudiced by the failure of any particular witness to take the stand. Mr. Cuddy, in affirmance of the foregoing, testified as follows: (Habeas Corpus Hearing—Page 86–87).

Q. (Mr. Baliles) All right, sir, do you have any knowledge, so far as you are concerned with this case, that

the petitioner was denied any witnesses in this case?

A. No, sir, not as far as I know, there was no denial of witnesses.

In like fashion, Judge Edwards, stipulated, after hearing all the testimony, that there was no denial of witnesses. (Habeas Corpus Hearing—Page 90).

\* \* \* the petitioner contends that he was denied the right to have witnesses called to testify in his behalf. While the evidence fully shows a number of witnesses were subpoenaed to be here, including witnesses who were in, as he quoted, 'the bull pen', to testify relative to certain admissions he may have made.

As in the previous two allegations, it clearly appears to this court that the petitioner has failed to substantiate any basis for relief under this third allegation.

Accordingly, the court is of the opinion that petitioner's prayer for relief by way of a habeas corpus petition is denied and dismissed.

The clerk is hereby directed to send a certified copy of this opinion to the petitioner and to the respondent.